UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

Civ. No. 17-cv-202-NDF

WESTERN WATERSHEDS PROJECT, et al.,
*Petitioners*,

v.

VICKI CHRISTIANSEN, Chief, U.S. Forest Service, et al.,

*Respondents*,

and

STATE OF WYOMING,
*Respondent-Intervenor*.

**PETITIONERS' MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Nathan Maxon
WSB NO. 7-4588
945 S. 4th Street
Lander, WY 82520
(307) 399-9515
nate.maxon@gmail.com

Elizabeth L. Lewis
Eric R. Glitzenstein
Meyer Glitzenstein & Eubanks LLP
4115 Wisconsin Avenue, NW, Suite 210
Washington, D.C. 20016
(202) 588-5206 (phone)
(202) 588-5049 (fax)
llewis@meyerglitz.com
eglitzenstein@meyerglitz.com

William S. Eubanks II
Meyer Glitzenstein & Eubanks LLP
2601 S. Lemay Ave., Unit 7-240
Fort Collins, CO 80525
(970) 703-6060
Fax: (202) 588-5049
beubanks@meyerglitz.com

# INTRODUCTION

Petitioners Western Watersheds Project, Sierra Club, Wyoming Wildlife Advocates, and Gallatin Wildlife Association respectfully file this Motion for Attorneys' Fees, Costs, and Other Expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Petitioners seek an order awarding attorneys' fees, costs, and other litigation expenses incurred in its successful prosecution of this case against Federal Respondents.

Petitioners submit this motion to satisfy any deadline for petitioning this Court for an award of attorneys' fees, costs, and other litigation expenses. Petitioners have conferred with counsel for Federal Respondents regarding this motion. Although the government opposes this motion, the parties hope to settle the fee matter between themselves. However, due to the government shutdown that began on December 21, 2018, Petitioners have not been able to enter settlement negotiations with counsel for Federal Respondents.

Once the government shutdown ends, Petitioners' counsel intends to explore settlement of the fee matter. Counsel for Federal Respondents have represented to Petitioners that they are also interested in resolving the fee matter without court involvement at that point. Should those settlement discussions ultimately prove unsuccessful, Petitioners will file an amended Motion for Attorneys' Fees, Costs, and Other Litigation Expenses, as well as additional or amended supporting documentation. This arrangement should allow the parties sufficient time to attempt to settle the present motion without the need for additional involvement from the Court. Petitioners are filing a separate motion to stay briefing on this motion to effect these agreements.

## I.     Petitioners Are Entitled To An Award of Attorneys' Fees, Costs, and Expenses Pursuant to EAJA.

In relevant part, EAJA provides that a "court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the

United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Petitioners are entitled to recover fees and costs under this standard.

### A. Petitioners Are Prevailing Parties Eligible for Fee Recovery Under EAJA.

As a preliminary matter, Petitioners are eligible to recover fees and costs under EAJA because Petitioners Western Watersheds Project, Wyoming Wildlife Advocates, and Gallatin Wildlife Association are non-profit organizations, as defined by 26 U.S.C. § 501(c)(3), with fewer than 500 employees, *see* 28 U.S.C. § 2412(d)(2)(B); *see also* Lewis Decl. ¶ 2. Although Petitioner Sierra Club is ineligible under EAJA, Lewis Decl. ¶ 2, the participation of the Sierra Club does not lessen Petitioners' entitlement to attorneys' fees because Sierra Club played a minor role in the litigation, contributed only a small amount towards fees and costs in this matter, and the litigation would have been brought even without the Sierra Club's participation.[1]

Further, Petitioners are prevailing parties under EAJA. A party is a "prevailing party" under EAJA if it "succeeds on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Baker v. Bowen*, 707 F. Supp. 481, 483 (D. Wyo. 1989) (quoting *Battle v. Anderson*, 614 F.2d 251, 258 (10th Cir. 1980); *see also Richardson*, 2011 WL

---

[1] *See* Lewis Decl. ¶ 2; *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, No. 05-460 BB/RHS, 05-588 BB/RHS, 2011 WL 13273079, at *6 (D.N.M. May 25, 2011) ("Nor does the fact one of the Plaintiffs, the Sierra Club, fails to meet the qualifications of the EAJA require any limits on the award of fees and costs."); *League for Coastal Protection v. Kempthorne*, No. 05-0991-CW, slip op. at 6 (N.D. Cal. Dec. 22, 2006) (awarding fees to plaintiffs' attorneys without regard to Sierra Club's ineligibility as "the case would have been filed without it."); *Wilderness Soc'y v. Rey*, No. 01-220-M-DWM, slip op. at 2, 8 (D. Mont. May 9, 2002) (granting the full amount of requested fees to three eligible, smaller environmental groups, despite the presence of the ineligible co-plaintiff, the Sierra Club, because "the role and contribution of each of the Plaintiffs . . . shows that no free-rider effect would come into play with an award of fees"); *Citizens for Better Forestry v. USDA*, No. 08-01927 CW, 2010 WL 3222183, at *1 n.2 (N.D. Cal. Aug. 13, 2010) (finding that Sierra Club's ineligibility has no bearing on the eligible parties' fee award because the case would have been brought even if the Sierra Club did not participate, and its participation did not materially contribute to Plaintiffs' success on the merits).

13273079, at *2 (D.N.M. May 25, 2011) ("A prevailing party is one who could obtain a court order to enforce any portion of its merits." (citing *Tx. State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989)); *Biodiversity Conservation All. v. Stem*, 519 F.3d 1226, 1230 (10th Cir. 2008))). Here, the Court granted summary judgment in Petitioners' favor on numerous dispositive issues, concurring with Petitioners that Respondents' decision to amend the 2008 special use permit to reauthorize the continued use of National Forest Service land for winter elk feedground activities at Alkali Creek Feedground was arbitrary and capricious in multiple ways, and sustaining all of the alternative grounds advanced by Petitioners for invalidating the Forest Service's decision and accompanying environmental analysis. *See* ECF No. 67 at 20 (agreeing with Petitioners that it was "reasonable, within the agency's jurisdiction, and feasible for the [Forest] Service to consider a shorter-term, reduced impact, and/or phase out alternative for the use of Alkali Creek as a feedground, while taking steps to transition elk to natural winter range and support historical migration routes"); *id.* at 25 (agreeing with Petitioners that the challenged "FSEIS is inadequate in that it fails NEPA's hard look requirement"); *id.* at 27 (agreeing with Petitioners that NEPA "requires the [Forest] Service to examine how granting the [challenged] permit through 2028 or some shorter term would interrelate with, potentially support, or potentially undermine, the objectives of the combined agency work under the 2007 [Bison and Elk Management Plan]"); *id.* at 27 (agreeing with Petitioners that "the agency action violated the Administrative Procedure Act").

The Court vacated the Forest Service's decision to amend the existing 2008 special use permit to reauthorize the continued use of National Forest Service lands for winter elk feeding activities at Alkali Creek Feedground, and remanded the challenged decision to the Forest Service for further analysis pursuant to the National Environmental Policy Act ("NEPA"),

precluding Respondents from implementing their arbitrary decision and providing Petitioners with the relief they sought in their Complaint. Moreover, the Court entered judgment for Petitioners and against Respondents, *see* ECF No. 68, and the government did not ultimately pursue an appeal of the Court's judgment. Under these circumstances, there can be no doubt that Petitioners are eligible to recover attorneys' fees, costs, and other expenses as prevailing parties under EAJA.

### B. Respondents' Position Was Not Substantially Justified.

Once a party's eligibility has been proven, the court "*shall* award" fees, costs, and other expenses pursuant to EAJA unless the government's position is substantially justified or special circumstances exist that make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A) (emphasis added); *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) ("Under EAJA, a fee award *is required* if: (1) plaintiff is a "prevailing party"; (2) the position of the United States was not "substantially justified"; and (3) there are no special circumstances that make an award of fees unjust." (emphasis added) (quoting 28 U.S.C. § 2412(d)(1)(A))). "Once it has been established that plaintiffs are prevailing parties, the burden shifts to the Government to prove that it was substantially justified in asserting its litigating position." *Wyo. Wildlife Fed'n v. United States*, 792 F.2d 981, 985 (10th Cir. 1986)). "The test for substantial justification in this circuit is one of reasonableness in law and fact." *Hackett*, 475 F.3d at 1172 (quoting *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995)) Thus, the government's position must be "justified to a degree that could satisfy a reasonable person." *Id.* "In this circuit the test for substantial justification is essentially one of 'reasonableness in both law and fact.'" *Fulton v. Heckler*, 784 F.2d 348, 349 (10th Cir. 1986) (quoting *United States v. Community Bank & Tr. Co.*, 768 F.2d 311, 314 (10th Cir. 1985)). A finding that the government's action was "arbitrary and capricious" strongly

suggests that its position was not "substantially justified." *See Estate of Smith v. O'Halloran*, 930 F.2d 1496, 1501-02 (10th Cir. 1991); *see also Fed. Election Comm'n v. Political Contributions Data, Inc.*, 995 F.2d 383, 386 (2d Cir. 1993) (Where "the legal standards which governed the merits phase of this litigation are precisely those to be applied to the EAJA question" of substantial justification, "the earlier panel's careful analysis of the government's position allows no further consideration of this issue."); *Olenhouse v. Commodity Credit Corp.*, 922 F. Supp. 489, 494 (D. Kan. 1996) (holding that the Tenth Circuit's finding that the agency's action was arbitrary and capricious necessarily meant it had no reasonable basis in law or fact and therefore was not substantially justified).

Moreover, where an agency's environmental analysis suffers from procedural defects, including the failure to adequately address environmental impacts or consider all alternatives, that position cannot be substantially justified for EAJA purposes. *See New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, No. 05-460 BB/RHS, 05-588 BB/RHS, 2011 WL 13273079, at *3 (D.N.M. May 25, 2011) (finding agency's failure to comply with its statutory duty under NEPA to consider "all" reasonable alternatives "fundamentally misconstrued the law," and thus, "cannot have been 'substantially justified' for EAJA purposes"); *id.* at *4 (finding that where the agency failed to consider "reasonably foreseeable" impacts, its decision is not "reasonable in fact" and is therefore not "substantially justified"); *San Luis Valley Ecosys. Counsel v. U.S. Forest Serv.*, No. 04–cv–01071–MSK, 2009 WL 792257, at *3 (D. Colo. Mar. 23, 2009) (finding that where the agency's environmental analysis suffers from "a number of procedural defects, including the failure to consider many environmental impacts . . . . a reasonable person, mindful of the applicable standards, would not have considered the agency's decision to approve the swap to be substantially justified").

Respondents cannot show that their position was substantially justified. The Court found that the Forest Service's SEIS completely omitted numerous issues that required analysis under NEPA, including an examination of reasonable alternatives, *see* ECF No. 67 at 24; "a *reasoned* explanation for its refusal to examine phase-out alternatives," *id.* at 20; consideration of the environmental consequences of artificial feeding and its impacts on the introduction and spread of Chronic Wasting Disease in the Jackson elk herd, particularly where "[t]here is *no question*" that the continued use of Alakli Creek Feedground to concentrate elk increased such risks, yet "the Service's only analysis and evaluation was of the longer-term use of the site as a feedground and the no-action alternative, without any evaluation of reduced impact or phase-out alternatives, or how these various alternatives affect all the considerations required to be evaluated under [NEPA]," *id.* at 24-25; and consideration of the cumulative impacts of the region's feedgrounds on wildlife resources, *id.* at 26-27. The Court also agreed with Petitioners that the Service's decision violated the APA. *See id.* at 27.

The Court also squarely rejected the Service's arguments regarding cooperative federalism, standing, and exhaustion. The Court found that: the fact that the State of Wyoming makes the ultimate decision whether to feed elk in the winter "does not excuse the Service from taking a hard look at the consequences of its action to allow the long-term use of NFS lands at Alkali Creek as a feedground," and that artificial feeding "appears to *blindly support*" WGFD's management goals while undermining the Service's own stated goal of "re-establish[ing] historic elk migration routes to provide increased viewing and hunting opportunities for outfitters and clients," ECF No. 67 at 25 (emphasis added); the Service's *own admissions* as to the non-speculative risks of the continued use of Alkali Creek Feedground undermined its argument that Petitioners had not demonstrated a sufficient injury, *id.* at 14-15; and "there is *absolutely no*

*merit* in suggesting the agency's attention was not drawn to a phase-out/transition alternative at Alkali Creek," *id.* at 16-17 (emphasis added).

Consequently, in light of the Court's strong language in repudiating the Forest Service's arguments; its finding that the Forest Service failed to comply with NEPA's procedural requirements, including its duty to examine the alternatives to, and impacts of, the proposed action; its finding that the Forest Service failed to offer reasoned explanations for those failures; and its finding that the Forest Service acted arbitrarily and capriciously in violation of the APA, Respondents' attempts to defend its SEIS were not substantially justified. *Richardson*, 2011 WL 13273079, at *4 ("[T]he Circuit['s] use of strong language in repudiating BLM's decisions indicates a lack of substantial justification." (citing *Golembiewski v. Barnhart*, 382 F.3d 721, 725 (7th Cir. 2004))).

      C.      **No Special Circumstances Make An Award Unjust**

The "special circumstances" exception to eligibility under EAJA "should be read narrowly because [] if the meaning of the term, special, is given too broad a meaning, it would subsume the purpose of the EAJA that allows for attorney's fees where a plaintiff prevails on the merits." *Rocky Mountain Wild v. Vilsack*, No. 09–cv–01272–WJM, 2013 WL 3233573, at *4. Indeed, to "deny plaintiffs the right to attorneys' fees when the EAJA expressly provides for it could lead to results where attorneys' fees would never be granted when a party prevailed." *Id.* "The burden of proving special circumstances . . . rests with the government." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). Here, Petitioners are unaware of any special circumstances that would make an EAJA award unjust. *Cf. United States v. 27.09 Acres of Land Situated in the Town of Harrison*, 43 F.3d 769, 773 (2d Cir. 1994) (finding that special circumstances precluded the award of fees under EAJA "where all of the fees were expended on discrete efforts that

achieved no appreciable advantage, and where the claim of the prevailing parties rests largely on a result to which the claimant made no contribution"); *Meinhold v. U.S. Dep't of Def.*, 123 F.3d 1275, 1277 n.1 (9th Cir. 1997) (considering a party's "bad faith" in its analysis of the award of attorneys' fees under EAJA).

**II.     Petitioners Are Entitled To Recover Enhanced Fees.**

EAJA allows for the award of attorneys' fees "based upon the prevailing market rate for the kind and quality of the services furnished," generally subject to a statutory cap. 28 U.S.C. § 2412(d)(1)(D)(2)(A) (emphasis added). EAJA established an hourly rate of $125, to be adjusted upward to account for increases in the cost of living since the statutory cap became effective in 1996. *See Richardson*, 2011 WL 13273079, at *7. In addition, the rate may be further enhanced if the court determines that a "special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a special fee." 28 U.S.C. § 2412(d)(2)(A).  The cost of living adjustment is distinct from any additional enhancement based on "special factors." *Baker v. Bowen*, 707 F. Supp. 481, 484 (D. Wyo. 1989).

The increased cost of living since the statutory cap became effective in 1996, as calculated using the Consumer Price Index, yields a current EAJA statutory rate of approximately $193.02 per hour for work done in 2016, $194.21 for work done in 2017, and $198.23 per hour for work done in 2018. *See Bureau of Labor Statistics*, CPI Inflation Calculator, https://data.bls.gov/cgi-bin/cpicalc.pl; *see also Cross v. Colvin*, No. 12-cv-03310-REB, 2014 WL 5002094, at *2 n.5 (D. Colo. Oct. 6, 2014) ("Except in unusual circumstances, a COLA [cost-of-living adjustment] should be freely given to plaintiffs applying for attorneys' fees under EAJA" (citing *Greenhill v. United States*, 96 Fed. Cl. 771, 783 (Fed. Cl. 2011))); *Baker*, 707 F. Supp. at 485-86 ("Th[e] district [of Wyoming] expressly recognizes and permits

the use of the CPI as a means of determining the cost-of-living adjustment"); *Martin v. Colvin*, 198 F. Supp. 3d 1248, 1254 (D. Kan. 2016) (providing that the cost of living adjustment "must be made according to the consumer price index for the year in which the fees were earned"). Accordingly, Petitioners are entitled to rates of at least between $193.02 and $198.23 per hour for work done in the various years of this case.

In addition, under EAJA, the rate may be further enhanced when "special factors" apply. 28 U.S.C. 2412(d)(2)(A). The Supreme Court ruled that "special factors" mean that the attorneys are qualified "in some specialized sense, rather than just in their general legal competence," and possess "distinctive knowledge or specialized skill needful for the litigation." *Pierce*, 487 U.S. at 572; *Chynoweth v. Sullivan*, 920 F.2d 648, 649 (10th Cir. 1990). Based on these special factors, at least some, if not all of Petitioners' rates should be enhanced to the market rates. Indeed, Petitioners' counsel have litigated numerous cases involving the specific issue of management of the Jackson elk herd. *See, e.g.*, *Fund for Animals v. Clark*, 27 F. Supp. 2d 8 (D.D.C. 1998); *Fund for Animals v. Jones*, 151 F. Supp. 2d 1 (D.D.C. 2001); *Mayo v. Jarvis*, 177 F. Supp. 3d 91 (D.D.C. 2016), *aff'd in part and vacated in part by* 875 F.3d 1 (D.C. Cir. 2017). The expertise of Petitioners' counsel in environmental law generally, and more specifically with regard to NEPA and the Jackson elk herd based on highly related prior cases handled by the firm, was essential to Petitioners' ability to pursue this case to a successful and decisive conclusion.

As an alternative basis for enhancement, it is clear that Petitioners achieved "exceptional success" in this case by obtaining the full relief Petitioners sought and prevailing on *all* of the claims in this case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (noting that "[t]he result is what matters" in determining whether Petitioners achieve "excellent results" that justify an enhanced award). It is clear that Petitioners achieved "exceptional success" in this case by

obtaining the relief sought and prevailing on *every one* of the claims in this case, *see id*—the exceptional success of which is reinforced by the government's decision not to defend the decision on appeal.

With the exception of attorney William Eubanks, the appropriate market for determining relevant hourly rates in this matter are Washington, D.C., where Petitioners' counsel are headquartered and where the attorneys and law clerks performed work in this case. The appropriate market for determining market rates for attorney William Eubanks is the Denver, Colorado metropolitan area, where he is located and performed his work in this case.

In the leading case on this issue, the Third Circuit held that a firm that is very comparable to Meyer Glitzenstein & Eubanks LLP—which it described as "a Washington, DC public-interest firm that specializes in complex environmental cases" and that is willing to take on substantial, multi-year cases without large advances of funding for litigation expenses and attorneys' fees, and which the court called a "rare bird"—was entitled to market rates in the market in which the attorneys regularly practiced, which was Washington, D.C. *See Interfaith Community Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703–08 (3d Cir. 2005). That case, and others like it, are functionally identical to this case, in which Petitioners' counsel, a firm which has a nationally recognized specialization in complex federal environmental litigation, and which has distinctive expertise regarding the particular factual issues regarding the artificial feeding of elk, public lands, and NEPA, took on an expensive, multi-year, multi-claim lawsuit and obtained excellent results for Petitioners, demonstrating entitlement to market rates in the market in which Petitioners' counsel regularly practice. *See Hash v. United States*, No. 1:99-cv-00324-MHW, 2012 WL 1252624, at *6 (D. Idaho Apr. 13, 2012).

To calculate Washington, D.C. market rates for the time expended by the attorneys and the law clerks employed by Petitioners' counsel, the D.C. Circuit has recently reaffirmed that the Legal Services Index Adjusted *Laffey* Matrix is the best indicator of market rates in the Washington, D.C. legal market. *See Salazar ex rel Salazar v. Dist. of Columbia*, 809 F.3d 58, 63–65 (D.C. Cir. 2015); *see also Laffey Matrix*, http://www.laffeymatrix.cm/see.html. If the parties cannot settle the fee issue and it must be litigated, Petitioners will provide affidavits and other supporting documentation that Meyer Glitzenstein & Eubanks LLP generally—and the attorneys specifically involved in this case—are entitled to at least the hourly market rates specified in the Adjusted *Laffey* Matrix based on the firm's longstanding expertise, training, skills, unique knowledge of the facts involved, and victories in similar litigation.

As to the time expended by Mr. Eubanks, the market rate for Mr. Eubanks' time—when he was located in the greater Denver metropolitan area as the Managing Partner of Meyer Glitzenstein & Eubanks LLP's western office—is at least $450 per hour. *See Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F. Supp. 2d 1243, 1250 (D. Colo. 2010) (finding in 2010 that "$400 per hour is a reasonable rate in the Denver area" for an "experienced environmental litigator (citing cases from 2007 and 2008 reaching the same result)). Not only does Mr. Eubanks have eleven years of relevant litigation experience concerning NEPA and other environmental law issues—including major victories on such issues in both the Tenth Circuit and the D.C. Circuit—but he also has a highly specialized post-J.D. degree from one of the nation's top environmental law schools (an Environmental Law LL.M. from Vermont Law School); he serves as an environmental law professor on public lands issues at Vermont Law School, George Washington University Law School, and American University Washington College of Law; and he has published an environmental law textbook and more than a dozen

environmental law review articles on NEPA and related topics. Thus, $450 per hour is a reasonable market rate for the time expended by Mr. Eubanks, and if this matter does not settle Petitioners will include additional declarations and other evidence establishing Petitioners' entitlement to at least that hourly rate for Mr. Eubanks' time in this case.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Thus, Petitioners are entitled to recover fees for the reasonable amount of time they expended on this case. *See Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1284 (D. Wyo. 2004) (declining to deduct time from Petitioners' fee request because Petitioners "obtained excellent results in this case and show be awarded for time spent pursuing these claims"). Given the complexity of the legal issues in this case, the extensive administrative record, and the multiple significant defects in Respondents' SEIS, Petitioners' counsel expended a reasonable amount of time on this case and are entitled to the customary hourly rates in the markets in which they are located and regularly practice.

**III.    Petitioners are Entitled to Recover Costs and Other Expenses.**

EAJA entitles Petitioners, as prevailing parties, to an award of reasonable litigation expenses, 27 U.S.C. § 2412(d)(1)(A), including such as filing fees, telephone calls, legal research costs, and other expenses necessary to pursuit of the litigation, "provided that such expenses are usually charged separately in the area." *San Luis Valley Ecosys. Counsel*, 2009 WL 792257, at *10 ("Online legal research expenses are generally awardable as costs under the EAJA." (citing *JGB Enterprises, Inc. v. United States*, 83 Fed. Cl. 20, 34–35 (Fed. Cl. 2008))); *id.* (providing that costs of photocopying, fax transmission, long distance calling, and other miscellaneous expenses are recoverable under EAJA where those costs "are typically charged separately to clients in the local market"); *NLRB v. Pueblo of San Juan*, 305 F. Supp. 2d 1229, 1237 (D.N.M.

2003) (finding that telephone and telecopier costs "are costs which are routine, are billed to the client in the normal course of business and are allowed under other fee statutes"); *Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir. 1986) (awarding costs under EAJA for filing fees).

Petitioners in this case have expended reasonable out-of-pocket costs of $6730.62 that were necessary for Petitioners to succeed in this litigation. *See* Lewis Decl. ¶ 8. Petitioners are entitled to recover this full sum.

## IV. Conclusion

Once the government shutdown ends, the parties plan to begin negotiations to attempt to settle the issue of attorneys' fees, costs, and other litigation expenses. Petitioners are filing this motion now in order to insure its timely filing and to satisfy EAJA's jurisdiction deadline. In the event that settlement negotiations fail, Petitioners will provide the Court and parties with an amended motion, including complete briefing, declarations, time and expense sheets, and other documents in support of this motion. Petitioners will file today a consent motion and proposed order to stay briefing on this motion for 90 days after appropriations are restored to both the Department of Justice and the Department of Agriculture, including the U.S. Forest Service, in order to provide the parties sufficient time to explore settlement and avoid litigating this matter. If settlement negotiations fail, Petitioners will respectfully request that the Court issue an award pursuant to EAJA of at least $350,962.03 in attorneys' fees, costs, and litigation expenses that have been expended and incurred as of the date of this motion.

Respectfully submitted,

*/s/ Elizabeth L. Lewis*
Elizabeth L. Lewis (*pro hac vice*)
Eric R. Glitzenstein (*pro hac vice*)
MEYER GLITZENSTEIN & EUBANKS LLP
4115 Wisconsin Avenue, NW, Suite 210
Washington, D.C. 20016

(202) 588-5206 (phone)
(202) 588-5049 (fax)
llewis@meyerglitz.com
eglitzenstein@meyerglitz.com

*/s/ William S. Eubanks II*
William S. Eubanks II (*pro hac vice*)
Meyer Glitzenstein & Eubanks LLP
2601 S. Lemay Ave., Unit 7-240
Fort Collins, CO 80525
(970) 703-6060
Fax: (202) 588-5049
beubanks@meyerglitz.com

Nathan Maxon
WSB NO. 7-4588
945 S. 4th Street
Lander, WY 82520
(307) 399-9515
nate.maxon@gmail.com

Counsel for Petitioners

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2019, I electronically filed the foregoing document using the CM/ECF system which will send notification of this filing to all counsel of record.

Respectfully submitted,

*/s/ William S. Eubanks II*
William S. Eubanks II